The Montrose Canal Company et al. v. The Lout-
senhizer Ditch Company et al.

1. Water Rights—Ditch Companies—Parties.

A ditch company may itself maintain an action to protect the rights of
its stockholders and consumers of water under its ditch.

2. Same—Res Judicata.

A decree rendered in a statutory proceeding under the irrigation act to
determine priorities to the use of water is conclusive as to the par-
ties thereto. A review or reargument of the decree may be had,
but only within the time and in the manner prescribed by the act.

3. Same—Limitations.

The right to bring an independent action to establish priority to the use
of water within four years after a statutory adjudication has been
had, as permitted by section 2434, Mills' Ann. Stats., may be exer-
cised only by those who were not parties to the proceeding, or, if
parties thereto, whose right of action grows out of matters arising
subsequent to the decree.

4. Same—Preferred Uses—Constitutional Law.

While the constitution recognizes a preference in favor of those using
water for domestic purposes over those using it for any other pur-
pose, it was not intended thereby to authorize a diversion of water
for domestic use from the public streams by means of large canals.
The use protected by the constitution is such use as the riparian
owner has at common law to take water for himself, his family or
his stock, and the like. If the term "domestic use" is to be given
a greater or different meaning than this, then as between such en-
larged use and prior rights for agricultural and manufacturing pur-
poses, it is subject to the constitutional provision requiring just
compensation to those whose rights are affected thereby.

*Error to the District Court of Montrose County.*

Messrs. Sherman & Twitchell and Mr. F. C. Goudy,
for plaintiffs in error.

Messrs. Black & Catlin and Messrs. Stuart & Murray,
for defendants in error.

Per Curiam.   This is an action brought by The Mon-
trose Canal Company and the other plaintiffs in error, in be-

half of themselves and other users and appropriators of water
through its canal, to restrain The Loutsenhizer Ditch Com-
pany, and all persons using water through its ditch, and W. J.
Toland, water commissioner of district No. 41, from divert-
ing or preventing certain waters of the Uncompahgre river
from flowing into the Montrose canal, predicating their right
to such relief upon an alleged priority to such waters to the
extent of 481 cubic feet per second of time for the purpose
of irrigation; and aside from such priority, the right to 50
cubic feet per second of time for domestic use.

It appears, *inter alia*, from their complaint, that on the 14th
day of November, 1888, an adjudication of the priorities of
water rights in water district No. 41, and of the ditches tak-
ing water from the Uncompahgre river, was had, wherein a
priority of 48 cubic feet of water per second of time was de-
creed to the Loutsenhizer ditch, in advance of, and prior to,
any water being allowed to plaintiff's ditch; and that the
defendant company has ever since made claim to and taken
from said stream that amount of water.

To this complaint defendants demurred upon the grounds,
among others, that there was a misjoinder of parties plaintiff
and defendant, and that the prior adjudication constituted a
bar to the maintenance of the present action. The court be-
low sustained the demurrer, and, the plaintiffs electing to
stand by their complaint, judgment was rendered dismissing
the action. From this judgment the plaintiffs prosecute this
writ of error.

The principal questions presented by this record have been
determined by this court in decisions rendered since the com-
mencement of this action. The ruling of the court below
upon the ground of misjoinder of parties, plaintiff and de-
fendant, is sustained by the decision in *Farmers' Ind. Ditch
Co. v. Agricultural Ditch Co.*, 22 Colo. 513. It is therein held
that, by reason of the number of consumers under ditches of
this character, it would be impracticable to make them par-
ties to a proceeding like the one before us; and that the ditch
company itself is the proper party to maintain the action, it

being trustee for its stockholders and consumers.   The court said : " It necessarily follows from what has already been said that the plaintiff company has such an interest as will enable it to maintain this action, and it is unnecessary either to unite with it its stockholders or those who are receiving water through its ditch, or make the users of water under the ditch or its stockholders parties defendant.   A contrary construction would practically defeat the ends of justice and close the courts to appeals from ditch companies which may be unlawfully and injuriously deprived of water to which they are entitled."

The right to maintain this action, notwithstanding the prior adjudication of priorities between the respective ditches under the acts of 1879 and 1881, was also determined adversely to plaintiffs in error in the case of the *Louden Irr. Canal Co. v. Handy Ditch Co.*, 22 Colo. 102, and the *Boulder and Weld County Ditch Co. v. Lower Boulder Ditch Co.*, 22 Colo. 115.   In the former case it was held that unless the former proceeding was opened in the manner and within the time provided in the act, it was *res adjudicata*, at least in so far as it fixes the priorities of those who were parties thereto and participated in such proceeding.   In the second case the court, discussing the sufficiency of the plea of *res adjudicata* predicated upon a decree entered in such a proceeding, held it was good and that it determined and settled the quantity of water to which the parties thereto were entitled, and that being in effect, plaintiffs were not entitled to readjudicate the same matters in that action.

Upon more mature consideration, we are confirmed in the view that section 2434, Mills' Ann. Stats., ought not to be given a construction that will permit parties to the adjudication, and whose rights have been determined therein after a full hearing, to ignore that decree and, by independent action, relitigate the matters therein determined.   That it was not within the contemplation of the legislature to confer the right to maintain such an action by parties to a former proceeding is manifest from other provisions of the statute.   By section

2421 of the act, opportunity is given for a hearing by any person, on application, who has failed or refused to offer evidence before the referee. By section 2425, an opportunity for reargument and review of the decree rendered in the statutory proceeding, with or without additional evidence, is afforded parties aggrieved at any time within two years from the time of entering the decree. Section 2427 provides for an appeal from the decree by any party feeling aggrieved thereby. We think, in view of the ample opportunities thus afforded the parties to the proceeding for a rehearing and review, that section 2434 had in contemplation an action by a person, association or corporation that was not a party to the prior proceeding, or, if a party thereto, whose right of action grows out of matters arising subsequent to the decree.

It is claimed that the decision in *Greer v. Heiser*, 16 Colo. 306, is an authority for bringing this action, but there is a marked difference between that case and this. That was a direct proceeding to amend the decree, and, it appearing that Heiser having had no actual notice of the proceeding and having made no appearance or filed his claim, the court held that this would seem to take the case out of the statutory limit. It is clear from the reasons given for that conclusion that had he made an appearance and offered testimony before the referee, the decree rendered in the statutory proceeding would have been held as *res adjudicata* of the matters sought to be litigated.

From the averments of the complaint it sufficiently appears that the plaintiff ditch company was a party to the statutory proceeding, and that its rights were therein adjudicated. No reason appears why it should not be bound by the decree therein rendered. Certainly no facts are urged that entitle it to maintain the present action. It is, however, insisted that the complaint is sufficient to entitle the consumers under the plaintiff ditch to fifty cubic feet of water per second of time for domestic use, regardless of the priority of defendant ditch to the use of water for irrigation; that the use of water for domestic purposes is recognized by the constitution

as paramount to all other uses; and the mere averment that water is required for domestic purposes, and an attempt to deprive another of such use by diverting the water to any other purpose, is a sufficient statement of a cause of action.

We think this claim is untenable. While it is true that section 6 of article 16 of the constitution recognizes a preference in those using water for domestic purposes over those using it for any other purpose, it is not intended thereby to authorize a diversion of water for domestic use from the public streams of the state, by means of large canals, as attempted in this case. The use protected by the constitution is such use as the riparian owner has at common law to take water for himself, his family or his stock, and the like. And if the term "domestic use" is to be given a different or greater meaning than this, then as between such enlarged use and those having prior rights for agricultural and manufacturing purposes, it is subject to that other constitutional provision requiring just compensation to those whose rights are affected thereby. *Strickler v. Colorado Springs*, 16 Colo. 61; *Armstrong v. Larimer County Ditch Co.*, 1 Colo. App. 49.

In the *Strickler Case*, this court, in construing the constitutional provision referred to as applied to water rights antedating its adoption, said:

" Our conclusion, therefore, is that the constitutional provisions relied upon were not intended to affect, and do not affect, prior vested rights, but that all owners of such rights are entitled to compensation therefor before the same can be taken or injuriously affected."

We think the doctrine of that decision is equally applicable to the rights of prior appropriators for manufacturing or agricultural purposes acquired since the adoption of the constitution. To give the phrase "domestic use" the construction contended for by appellants would result in laying waste many valuable agricultural lands, and destroying manufacturing rights to the use of water, to the end that the same may be diverted for domestic use by communities settling at

points remote from the source of water supply, although the water could only be taken to such distant points by long irrigating canals. This would require the diversion of many times the volume of water actually required for domestic use, as by far the greater portion of it would be lost as the result of evaporation and seepage.

In the view we have taken of the foregoing questions, it becomes unnecessary to consider the objection urged against the sufficiency of the complaint in other particulars. We think the ruling of the court below on the demurrer was correct, and its judgment dismissing the action is accordingly affirmed.

*Affirmed.*