No. 17,282.

QUIRICO ET AL. *v.* HICKORY JACKSON DITCH COMPANY.

(276 P. [2d] 746)

Decided November 22, 1954.

482

Mr. GEORGE M. CORLETT, Mr. CHARLES R. CORLETT, Mr. GAIL F. OUREN, for plaintiffs in error.

Messrs. MOSES & DESOUCHET, for defendant in error.

*En Banc.*

MR. JUSTICE CLARK delivered the opinion of the Court.

ACTION was commenced by the Hickory Jackson Ditch Company, the purpose whereof was to procure an order permanently restraining defendants from diverting water from Rock Creek in Water District No. 20, Irrigation Diversion No. 3, of the State of Colorado, in depletion of plaintiff's claimed right under its decree of December 15, 1934, with established date of priority thereto from said Rock Creek as of September 24, 1919; also to prevent defendants from further diverting water from the Bowen Drainage Canal.

By answer, defendants denied plaintiff's title; affirma-

tively alleged use of said waters by themselves and their predecessor for many years without objection or interference until 1950, and attacked plaintiff's 1934 decree on the ground that the court awarding the decree was without jurisdiction in that no notice of said adjudication proceeding had been served upon defendants or their predecessor in title. They also filed a cross complaint alleging use of said water upon their lands from and since 1914; further attacked plaintiff's decree as having been obtained from a court lacking jurisdiction because of failure of notice, actual or constructive, in a proceeding in which defendants did not participate and of which they had no knowledge until 1950; and further alleged that prior to that date no administration of said stream had been carried out by the officials, nor had defendants' use of said water been challenged by anyone.

On plaintiff's motion, the trial court ordered dismissal of defendants' cross complaint as failing to state facts sufficient to constitute a claim, and thereafter proceeded upon the issues formed by the complaint and answer, resulting in judgment favorable to plaintiff. The record then was brought to this Court for review by writ of error. *Quirico v. Hickory Jackson Ditch Co.*, 126 Colo. 464, 251 P. (2d) 937.

As in all proceedings in this Court, the opinion in that case is applicable only to the record then before us. Under the circumstances there presented we applied the oft-repeated rule that upon consideration of a motion to dismiss, the allegations of the pleading attacked must be accepted as true and that upon trial evidence adduced on behalf of the pleader will establish the same as facts. The Court, in effect, thereupon held that, if it were true, that defendants for many years had been appropriators and users of the disputed waters without molestation or interference; that they were not participants in the adjudication proceedings in 1934; had not consented to entry of decree to plaintiff, and had no knowledge thereof or of the filing of a claim on behalf

484

of plaintiff therein; were without notice, actual or constructive, and knew nothing about said proceeding; that after entry of said decree the waters of said source were not administered by the water officials charged with that duty nor defendants' headgate subjected to change or regulation by said officials in any way nor did there occur any challenge by official act, notice, or warning sufficient to put defendants upon inquiry to cause them to investigate until long after the expiration of the four-year statute of limitation (section 183, chapter 90, '35 C.S.A., and subsequent Acts amending or affecting the same, S.L. '43, chapter 190, sections 17 and 25), said statute would be inoperative as to them and would not begin to run until such time as the entry of plaintiff's decree might be brought to their attention and knowledge. More tersely stated, it was conceived to be the rule that the commencement of the statutory period of limitation must be premised upon either, (1) service of due and proper notice prior to the adjudication, or (2) knowledge of the rendition of decree thereafter, whether by formal notice, administration of the waters of the source stream, or by any act or occurrence that would call attention to such decree. Upon said record we held that it was error on the part of the trial court to have ordered dismissal of the defendants' counterclaim and remanded the cause for further proceedings in order that defendants might have an opportunity to prove the allegations of their cross complaint.

█ Under conditions generally prevailing in proceedings for the adjudication of priority rights to the use of water, the provisions of the two and four year statutes of limitation have been strictly enforced. *Fort Lyon Canal Co. v. Arkansas Valley Co.,* 39 Colo. 332, 90 Pac. 1023. In such instances the source of supply is usually a live stream, throughout the course of which close administration is had by the duly authorized water officials and there is not the opportunity for anyone to claim that he has been imposed upon. In the instant case cer-

tain conditions appear which are peculiar to it. It is undisputed that Rock Creek, for a distance of several miles above the situs of the present controversy, has no well-defined channel and that a considerable portion of that area actually is drained by the Bowen Drainage Canal. In fact, there seems to be some confusion concerning the identity of the channels of Rock Creek, and of Spring Creek, a tributary thereto, near their confluence. At about this point also appears to be the crossing of the Bowen Drainage Canal. In the historical background of the present controversy it seems that the Bowen Drainage Canal was siphoned under Rock Creek as it progressed on its way towards the Rio Grande river into which it emptied. Later, due to flood and sedimentation, the siphon was destroyed, whereupon the water from the Bowen Drainage Canal then was diverted into the channel of Rock Creek, from which point it continued to flow towards the river. Said channel below that point is well-defined and unlike the marshy area above. At one time the predecessor of defendants undoubtedly diverted water from the Bowen Drainage Canal, as likewise did plaintiff, which, also, had a right in Rock Creek. At the time this litigation began, defendants no longer diverted water directly from the drainage canal, the headgate of their present ditch being located so as to divert water out of Rock Creek below the point of the obliterated siphon where the drainage canal is emptied into Rock Creek. This headworks then was connected with the old original ditch leading to defendants' land.

While no charge of fraud against plaintiff is alleged by defendants, nevertheless in their behalf it is strongly represented that plaintiff and the water officials cooperated in an effort to keep defendants and their predecessor in ignorance of plaintiff's 1934 adjudication decree until after the expiration of the four-year period following its entry. If ever justified under any circumstances, the situation with which defendants apparently

were confronted, if credence be given to the allegations of their cross complaint, presents an illustration where the tolling of the statute of limitation might be recognized.

Upon further proceedings following remand, it was established that defendants are the successors in title of one Frezza, who located the land as a homestead about 1913 and constructed the original ditch intended to water the same. The ownership of said land and the appurtenant water rights continued in said Frezza until 1946 when he conveyed same to defendants. Defendants testified that they were on and about the Frezza place for many years, frequently helped Mr. Frezza and sometimes worked for him for wages, and that they were entirely familiar with the circumstances concerning the use of water for irrigation of said tract. They testified also, that so far as either or any of them knew, Mr. Frezza had never received notice of the adjudication proceeding in 1934. After defendants acquired the Frezza place they made some changes in the headworks of the ditch and likewise enlarged its capacity. It will be noted, however, that between the years 1934 and 1946, Frezza actually was the owner and in possession of said lands and ditch and water rights. All matters pertaining to plaintiff's decree of 1934 coming to his knowledge within the period of time must be held as binding upon defendants to the same extent and effect as they would have been on Frezza himself.

In the first place, the evidence introduced on behalf of defendants in an attempt to show that Mr. Frezza did not have notice of the 1934 adjudication proceedings, lacks much of being sufficient, in view of the specific declarations contained within the adjudication decree itself to the effect that all persons interested had been given due and legal notice thereof. In the absence of a strong showing to the contrary such recitals within the decree raise the presumption that notice was regular and that the court had jurisdiction. *Farmers' Union*

*Ditch Co. v. Rio Grande Canal Co.,* 37 Colo. 512, 86 Pac. 1042.

This brings us to the second phase of the question, whereby it is contended that defendants and their predecessor Frezza had no knowledge or information concerning the claim of plaintiff until the year 1950, thus justifying the tolling of the period of limitation. The evidence on this point is conflicting and we will refrain from setting it out in detail. The testimony of various water administration officials, summarized, is to the effect that beginning with the year 1935 the headgate of the Frezza ditch was shut down; that it was specifically posted in 1936 and several times thereafter; that Mr. Frezza, on different occasions, was advised by said officials of plaintiff's decree, and that his headgate was closed in order to supply that decree; that on a number of such occasions Frezza stated to the official then conversing with him that he was not claiming any water from Rock Creek and stated that he was the owner of a share of water in the Commonwealth Canal which crossed Rock Creek several miles above the diversion point of the Frezza ditch, now the Quirico and Kane ditch; that he had caused the water to which his Commonwealth share was entitled to be emtied into Rock Creek and that his attempted diversion therefrom was only to take his Commonwealth water.

The trial court, in reliance upon such evidence, and the recitals contained in plaintiff's adjudication decree of 1934, made findings in favor of plaintiff and entered judgment accordingly. Defendants having been given opportunity to prove their contentions, resulting in their failure to do so to the satisfaction of the trial court, we feel that the findings of the trial court are conclusive upon us. *Oriental Refining Co. v. Hallenbeck,* 125 Colo. 77, 83, 240 P. (2d) 913. In view of said findings, it further is our considered opinion that the four-year statute of limitations should be held to apply in this instance. *Fort Lyon Canal Co. v. Arkansas Valley*

*Co., supra; Kibbée v. Kostelic,* 87 Colo. 215, 287 Pac. 652; *Stratton v. Beaver Farmers' Canal and Ditch Co.,* 87 Colo. 349, 287 Pac. 861; *Moore v. Burritt,* 106 Colo. 413, 105 P. (2d) 1084. It may well be that notice in the original adjudication proceeding actually was defective and if subjected to timely objection might have been deemed insufficient, but such is the nature of property rights to the use of water that there must come a time beyond which all such objections are barred. It is important that decrees determining priority rights to use of water have both vitality and finality.

 The trial court likewise determined the issues against defendants with respect to the diversion of water collected by the Bowen Drainage Canal. Defendants did not claim the right to the use of water diverted from that canal pursuant to any contract with the canal company, as did the plaintiff, but simply by the right of appropriation and application to a beneficial use as though the drainage canal were a natural stream. Whether an appropriation may be made from a drainage canal, or the waters carried thereby be held subject to control and disposition by its owners by agreement in the nature of contract, conveyance, or otherwise, are questions not now before us. Whatever may have been Mr. Frezza's intention in taking water from the drainage canal in the first instance, we are likewise not now concerned, for the fact remains that the present diversion claimed by the defendants takes water, not from the drainage canal, but from Rock Creek below the point where the drainage canal is turned into that channel. Once the collected water in the drainage canal is turned into a natural water course, it becomes a part of the supply of that stream and is subject to public appropriation and use. Consequently, in this case, since the collected water is emptied from the canal into the Rock Creek channel, any diversion therefrom attempted by the defendants, becomes subject to the adjudication decree of December,

1934, the defendants themselves having no decreed rights in that stream.

The judgment of the trial court is affirmed.